| THIBODEAUX, Judge.
Defendants, St. Romain Oil Company and Ranger Insurance Company, appeal the trial court’s judgment of liability and damages in favor of John A. Blackwell. Mr. Blackwell was injured by defendant Timmy Normand in a fight at the Marksville Shell Wash-n-Go, which is owned by St. Romain Oil Company.
We affirm.
| -¿ISSUES
The central issue is whether the trial judge properly imposed liability on St. Romain Oil Company for injuries caused by defendant Timmy Normand in a fight on its premises.

FACTS

Though the exact cause of the incident is disputed, Timmy Normand grabbed John Blackwell in the parking lot of the Shell Wash-n-Go. Mr. Normand threw Mr. Blackwell to the cement, injuring him. The incident occurred after a high school football jamboree when the parking lot was crowded with teenagers.
Shell Wash-n-Go has had problems with teenagers loitering in the parking lot since its first year of business in 1990, according to its owner, Todd St. Romain. Mr. St. Ro-main’s first solution was having his employees ask loiterers to leave. He next tried calling the city police as needed to clear the lot. In 1992, he hired a security service, the Avoyelles Parish Auxiliary Service, to curb the loitering problem at his business. Mr. St. Romain posted “no loitering” signs and used the security service. He found the problem was worse in the summer months when school was out, and so only used the service during those months.
Though Mr. St. Romain testified his concern was to control loitering and thereby generate more business, he admitted there were some fights, and the loitering probably led to these fights. There were no fights at the store when the deputies were present. In the spring and summer of 1998, he found the auxiliary service did not work consistently to control the loitering problem, and Mr. St. Romain discontinued his use of the auxiliary force. He called the Marksville City Police to act as security in the parking lot as needed. During this time the store was losing nearly $7,000.00 per month in sales.
IsAt the time of the incident, the city police were only called when needed; they would corral the loiterers and issue citations. Mr. St. Romain testified there was no fighting or serious loitering when either the deputies or the city police were working. After this incident, Mr. St. Romain hired the Marksville City Police to remain in his parking lot for security and changed his store policy to only allow liquor sales to patrons over 21.
While no expert testimony was presented regarding security, several deputies and policemen testified that when they were on duty at the store, no fighting occurred. In 1992 and 1993, numerous calls were logged to the city police for assistance to clear the parking lot. On the night of the incident involving Timmy Normand and John Blackwell, the police were called two times. The record does not indicate whether either of those calls were about the fight between Normand and Blackwell.
Mr. Blackwell received a concussion in his inner ear and a fractured skull. He was required to remain in bed for two weeks to combat dizziness from the concussion, he has some permanent hearing loss, and he still has ringing in his ear. He had to withdraw from his first semester of college, and is still prohibited from lifting heavy objects.

LIABILITY

In Ambrose v. New Orleans Police Dept. Ambulance Service, 639 So.2d 216, 220 (La. 1994), the supreme court discussed the following standard for review of factual findings:
*443 In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), this Court held that the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. A proper review, therefore, cannot be “completed by reading so much of the record as |4will reveal a reasonable factual basis for the finding in the trial court, there must be a further determination that the record established that the finding is not clearly wrong.” Id. at 1333. More recently, regarding this constitutional appellate review of fact in civil cases, La. Const. art. 5, Sec. 10, we have had occasion to say in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), a case which involved the review of damages, that “the discretion vested in the trier of fact is ‘great,’ and even vast,” and in Stobart v. State, 617 So.2d 880, 882-883 (La.1993), which involved the standard of review of findings of fact, a “court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ ” and “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. In each of these eases there was but a perpetuation of the principle set down in Arceneaux.
The trial judge stated, in his written reasons for ruling, that defendant Timmy Normand was clearly liable for his intentional tort and he did not find sufficient provocation on Mr. Blackwell’s part to warrant any reduction in damages. He based the liability of St. Romain Oil Company on the violation of its duty to protect Mr. Blackwell, if it was foreseeable that he was or could be in danger, and found the breach of that duty was the proximate cause of his injuries.
In order to establish liability, the plaintiffs in an action must establish 1) the conduct in question was the cause-in-fact of the resulting harm; 2) the defendant owed a duty of care to the plaintiff; 3) the requisite duty was breached by the defendant; and 4) the risk or harm was within the scope of the breached duty. Mundy v. Dept. of Health & Human Res., 620 So.2d 811, 813 (La.1993). (Citations omitted).
Both the fourth and fifth circuits recently addressed the liability of a business for third-party attacks on its patrons. The fourth circuit granted the defendant’s motion for summary judgment finding they had no duty to protect the plaintiff from inarticulated criminal conduct. Kenney v. Cox, et al., 649 So.2d 15 (4th Cir.1994). In Kenney, the fourth circuit held a landlord has no duty to protect the guest of a tenant from “inarticu-lated random crime.” The court rejected the plaintiffs analogy of the duty owed in an innkeeper/guest relationship. The fourth circuit found even if the landlord assumed such a duty toward its tenants, no such duty was owed to third party guests.
The fifth circuit found a restaurant liable for breach of the duty it assumed to provide security in its parking lot. Romaguera v. Piccadilly Cafeterias, Inc., 648 So.2d 1000 (5th Cir.1994.) Piccadilly assumed the burden of providing security and had a duty not to be negligent in providing that security. The court held a business which is negligent in providing security or which provides inadequate security is responsible for damages suffered by its patrons as a result. In Ro-maguera, as in the instant case, the facts indicated the harm was not only foreseeable, but that the harm could have been easily prevented by the visible presence of an armed security guard.
Whether a duty is owed is a question of law. Whether defendant has breached a duty owed is a question of fact. In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm ... This duty does not extend to unforeseeable or unanticipated criminal acts by third persons. However, when a duty to protect others against such criminal mischief has been assumed, liability may be created by a negligent breach of that duty ... As stated in the Restatement (Second) of Torts section 344 comment (f) (1965): ‘If the place or character of his business, or his past experience, is such that he [the proprietor] should reasonably anticipate careless or criminal conduct on the part of *444 third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.’
Mundy v. Dept. of Health & Human Res., 620 So.2d at 813-814.
[6The trial judge determined Mr. St. Romain clearly knew of the potential for trouble at his business. Mr. St. Romain attempted to solve the loitering problem by hiring security. The judge found it foreseeable that fights could break out and credible testimony indicated many fights occurred there. He noted no fights occurred while auxiliary deputies or city policemen were, present. He found the expense of security was minimized because it was not necessary year round. Security was needed during the summer and during weekends and special events, such as the football jamboree. The judge disagreed with the defense’s position that the fight happened instantly and could not have been prevented; there was no evidence of fights while security was present.
The trial judge attributed joint liability, 50% to Timmy Normand, and 50% to St. Romain Oil Company. The judge determined Mr. Blackwell’s damages to be $91,-901.98; however, since the parties stipulated to a jurisdictional limit of $50,000.00, the judge limited liability to that amount.
We agree with the trial judge’s determination of liability. The record does not support the defense claim of provocation. The judge did not award liability over the stipulated amount. There is no error in his decision. Each party owes Mr. Blackwell $25,000.00. See Touchard v. Williams, 617 So.2d 885 (La.1993).
We note that the judgment differs from the judge’s reasons in that it is cast in terms of “in solido” liability. The trial judge correctly characterized this action as one of joint liability. The judgment, therefore, will be amended accordingly.

DECREE

For the foregoing reasons, the judgment of the trial court is amended to cast each negligent party as jointly liable. In all other respects, it is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.